COBB & AVERY V. F. E. TRAMMELL ET AL.

No. 578.

**1. Resulting Trust—Sale of Land.**—T., with money belonging to his wife and her sister, bought land for them, paying part cash, taking deed in the name of the wife alone, and giving a note for balance of purchase money signed by himself and wife, and which was intended to be paid out of moneys belonging to the sisters. Thereafter, while holding money of theirs in his hands, he allowed the vendor's lien to be foreclosed on the land and procured a deed thereof to himself from the purchaser under the foreclosure sale, but was acting in the matter for and as the agent of his wife and her sister. *Held,* that whether he had recognized their rights or not, there would have been a resulting trust in their favor; and that a purchaser at execution sale under a judgment against T., with actual notice of such rights, acquired no title.

**2. Bona Fide Purchaser—Valuable Consideration—Credit on Judgment.**— A creditor who purchases land at execution sale under his judgment, and merely credits the amount of his bid on the judgment, is not a bona fide purchaser for value as against the rights of third persons.

**3. Wife's Separate Property—Community Estate.**—Where the husband settles an adverse claim to land which is the separate property of his wife by giving his own notes therefor, with the intention that the interest so acquired shall be the wife's separate estate, and holding in his hands at the time moneys of the wife in excess of the amount of the notes, such interest does not become community property.

**4. Execution Sale of Land Subject to Purchase Money—Superior Title.**— T. purchased land entirely on a credit, taking deed therefor which was not recorded. The funds to pay his purchase money notes were advanced by one B., under an agreement that when the payment was completed T. would return his deed to the vendor, who would then execute a deed to B., and the latter would hold the title until T. repaid the money so advanced. *Held,* that the superior title remained in the vendor, and that a purchaser under an execution sale against T. acquired only his equity, but could not acquire the title without payment to B. of the purchase money advanced by him.

APPEAL from Limestone.     Tried below before Hon. RUFUS HARDY.

*Cobb & Avery,* and *T. J. Gibson,* for appellant.—1. Where land is conveyed to a married woman, and paid for out of her separate money and the money of another, the legal title thereto is in such married woman, free from any trust in her favor, and such legal title is not in the community with a trust in favor of such married woman or other person, and her husband is under no obligation to protect such property from sale for a vendor's lien thereon. Edwards v. Brown, 68 Texas, 329; Hill v. Moore, 62 Texas, 310; Patty v. Middleton, 82 Texas, 586.

2. Where land is thus conveyed to a married woman and thus paid for in part, but with a vendor's lien thereon, and such lien is foreclosed and the land bought by an innocent purchaser, he gets the full legal and equitable title to said land, free from any trust or claim therein in favor of such married woman or other person. Foster v. Powers, 64 Texas, 247; McAlpine v. Burnett, 23 Texas, 650; Ross v. Kornrumpf, 64 Texas, 390; Rev. Stats., art. 2318.

3. Where such purchaser conveys such land to the husband of such married woman, and it is paid for out of community funds, it becomes community property, free from any trust or claim in favor of such married woman or other person. Zorn v. Tarver, 45 Texas, 519; Duncan v. Bickford, 18 S. W. Rep., 598; Aiken v. Jefferson, 65 Texas, 137; Perry on Trusts, 133; White v. Harris, 19 S. W. Rep., 1077.

4. Where a person claims a resulting trust in land, she must clearly prove that her money went into the purchase of said land, and the exact proportion of the whole price which she paid, and must trace and identify said money into said land. Zundell v. Gess, 73 Texas, 144; 2 Pom. Eq., sec. 1040; Olcott v. Bynum, 17 Wall. (U. S.), 44; In re Wood, 5 Fed. Rep., 443; Ferris v. Van Vechten, 73 N. Y., 113; Reed v. Reed, 135 Ill., 482; 25 N. E. Rep., 1095.

5. Where land is paid for partly out of the separate means of the wife and partly out of community funds, the land becomes community property in proportion to such community funds. Braden v. Gose, 57 Texas, 37; Cleveland v. Cole, 65 Texas, 402.

*Farrar, Kincaid & Williams,* for appellees.—1. The fact of the foreclosure against F. E. Trammell and Mary E. Trammell on the note executed by them as part of the purchase money of the 480 acres of land to W. L. Griggs, and a sale thereunder to T. J. Gibson, and the subsequent purchase of the 480 acres tract from Gibson (less the 123 acres released to the purchasers thereof) by F. E. Trammell, and taking the deed in his own name, did not affect or change the separate character of the land bought with the separate means of Mrs. Trammell and Miss Burton, so long as F. E. Trammell saw fit to recognize the rights of Mrs. Trammell and Miss Burton. 1 Story's Eq. Jur., sec. 410; 2 Pom. Eq. Jur., sec. 754, and note 1, p. 213; Parker v. Coop, 60 Texas, 111; Zorn v. Tarver, 57 Texas, 388.

2. Where a husband has received the separate money of the wife and used it for his own purposes, he may not only repay her by holding property or land in his own name in trust for her, but more especially may he do this where in fact largely more than one-half of the land so held by him was paid for out of her separate means, and her equity therein is good against purchasers with notice. Ross v. Kornrumpf, 64 Texas, 390; McKamey v. Thorp, 61 Texas, 648; Parker v. Coop, 60 Texas, 111; Stoker v. Bailey & Goodjohn, 62 Texas, 299.

3. When title to property has been taken in the name of the husband during the existence of the marital relation, the presumption of

law is that it is community property, but this presumption can be overcome and repelled by proof, and whether the title be taken in the name of the husband or wife makes no difference, and the property remains the separate property of the party with whose money it was purchased. Love v. Robertson, 7 Texas, 6; Huston v. Curl, 8 Texas, 239; Rose v. Houston, 11 Texas, 324; Smith v. Strahan, 16 Texas, 314; Smith v. Strahan, 25 Texas, 103; Tucker v. Carr, 39 Texas, 102.

4. The fact that the legal title to this land remained in F. E. Trammell until the levy of the execution and sale, and that he had not conveyed to his wife or Miss Burton, in no way affects the status of the title, or prejudices their claim, for equity will consider that as done which under the facts should have been done. 1 Story's Eq. Jur., sec. 64g; Craig v. Leslie, 3 Wheat., 564.

5. The settlement with Ann Birch for the one-fifth interest she claimed in the 480 acres of land, by taking a deed to that interest in the name of Mary E. Trammell, although F. E. Trammell executed his two notes of $100 each therefor, was a contract in respect to and for benefit of her separate estate and enforcible against her and such estate, and when taken in connection with the original agreement between Trammell and wife and Miss Burton, that the land should be the separate estate of Mrs. Trammell and Miss Burton, and should be paid for with their separate money, and the fact that Trammell held separate funds of theirs, repels the idea that this one-fifth interest conveyed to Mrs. Trammell became community. Baker v. Baker, 55 Texas, 577; Hall v. Hall, 52 Texas, 299; Peters v. Clements, 46 Texas, 125; Johnson v. Burford, 39 Texas, 242; Dunham v. Chatham, 21 Texas, 244; Higgins v. Higgins, 46 Cal., 259; Read v. Rahm, 65 Cal., 343.

LIGHTFOOT, CHIEF JUSTICE.—This was an action of trespass to try title brought by appellants (plaintiffs), against appellees (defendants), on July 13, 1891, to recover two tracts of land in Limestone County, namely, 480 acres, part of the Randolph Slatter survey, and 15 acres, part of the E. Votaw survey, situated in the village of Armour. Plaintiffs alleged, that defendants J. Nussbaum and William Cameron & Co. claimed a lien on part of the land, which was inferior to their title. The defendant answered, August 11, 1891. William Cameron & Co. disclaimed any interest in or lien upon the land, but set up and asked a foreclosure of a certain mortgage on certain machinery situated on a 15 acres tract. Defendant J. Nussbaum set up and asked a foreclosure of two certain mortgages; one on 100 acres of the 480 acres tract, and one on 43 acres of land, which was not a part of either tract sued for, and also on certain machinery which was situated on the 15 acres tract sued for.

Defendants, F. E. Trammell and wife, Mary E. Trammell, and Thomas Wooldridge and wife, Mattie Wooldridge, pleaded not guilty. Alexander Broom disclaimed as to the 480 acres tract, and pleaded not guilty as to the 15 acres tract; he also pleaded, that if he did not own

the 15 acres tract, then he had a lien on it for purchase money advanced to Trammell for its purchase, and he asked a foreclosure of said lien. R. E. L. Sanders disclaimed as to all, except 10 acres of the 480 acres tract, and as to this he pleaded not guilty. W. A. Davis and wife, Mary L. Davis, and the minors, Grace Davis, Willie Pearl Davis, and Jewell Davis, disclaimed as to all except 50 acres of the 480 acres tract, and as to this they pleaded not guilty. Mary E. Trammell having died intestate, her death was suggested, and her only heirs were made parties, to wit, the minors, Claude W. Trammell, Frank Burton Trammell, and Mary F. Trammell. L. J. Farrar was appointed guardian ad litem for the minors, Grace Davis, Willie Pearl Davis, Jewel Davis, Claude W. Trammell, Frank Burton Trammell, and Mary F. Trammell, and filed answer for them. Defendants —— Burton and —— Holden were simply tenants of F. E. Trammell.

The case was tried before the court without a jury, judgment was rendered against plaintiffs, and in favor of William Cameron & Co. and Nussbaum foreclosing their liens, to which judgment plaintiffs excepted, and have appealed to this court.

There is no statement of facts in the record. The conclusions of fact by the court below are quite lengthy, but it will only be necessary to consider such parts as may be necessary to determine the rights of plaintiffs on this appeal. The following is a correct plat of the 480 acres tract:

Out of this tract it is not disputed that the 10 acres of the R. E. L. Sanders, 10 acres of B. F. Wallace, and 103 acres of A. N. Duff were sold to said parties, and that appellants have no valid claim thereto. W. A. Davis and wife, Mary Davis, and the minors, Grace Davis, Willie Pearl Davis, and Jewel Davis, established a valid and unquestioned title to the 50 acres tract set up in their answer and shown in the southeast corner of the above plat, and their rights are not seriously questioned by appellants.

It was proved that the 480 acres tract was bought by F. E. Trammell for his wife Mary E. Trammell, and her sister, Mattie Burton, now Mattie Wooldridge, said Mattie being then a minor, and to be paid for out of money in his hands ($1800), the proceeds of land inherited by said Mary E. and Mattie from their parents. That the first payment, $480, was made out of their said money, and the deed taken to said Mary E. Trammell, for the benefit of herself and sister Mattie. That the note for the deferred payment of $480 was signed by the said Mary E. Trammell and her husband, F. E. Trammell, but it was understood that the same was to be paid out of the said funds in the hands of F. E. Trammell, and the portion of Mary E. Trammell was intended as her separate property. The said purchase money note was reduced by payments (from sale of said 123 acres) to $275. This balance not having been paid, the vendor's lien was foreclosed in March, 1884, upon the said 480 acres (except the 123 acres bought by Sanders, Wallace, and Duff), and said land was sold in May, 1884, and bought in by T. J. Gibson, who deeded the same back to said F. E. Trammell for $475.

In 1883 Trammell and wife sold said 50 acres to W. A. Davis and wife, and they have held and owned it ever since.

In 1883 there was a verbal partition between said Mattie Burton and Mary E. Trammell and her husband, F. E. Trammell, in which 100 acres of said land was set apart by metes and bounds to said Mattie Burton as her portion of the land, the same as shown on the plat above, and it has ever since been recognized and used as hers. She lived with Trammell and wife until sometime in 1891, when she married Thomas Wooldridge. Up to the time of her marriage her said land was worked by Trammell, who paid her rents for the same; and since January, 1892, she and her said husband have claimed, used, and occupied the said 100 acres, and said parol partition has been fully ratified.

On December 28, 1885, Liddle & Co. recovered a judgment against F. E. Trammell in the Justice Court of Dallas County for $176.55, an abstract of which was recorded in Limestone County, February 1, 1886; and under executions issued on said judgment, 307 acres of said 480 acres were sold to appellants, Cobb & Avery, for $50, September 2, 1890, and the entire tract, with the said 15 acres tract, was sold to them October 1, 1890, for $50. Cobb & Avery (appellants) were the owners of a half-interest in said judgment, and they paid no money at

such sales, but credited the amount of such bids on the judgment. After the sheriff's sale they paid Liddle & Co. $25 for their half-interest in the land.    Appellants had notice before the sale that the said 480 acres tract was bought and owned as the separate property of said Mary E. Trammell and her sister, Mattie Burton, and that the balance of the tract, after taking out the portions sold off and the portion set apart to Mattie Burton (Mrs. Wooldridge), was the separate estate of said Mary E. Trammell, and was the homestead of herself and husband and family, and notice of said facts was fully given at the sales. The said F. E. Trammell and Mary E. Trammell were husband and wife, and their homestead was upon said 207 acres—the balance of said 480 acres tract of land.

In September, 1888, F. E. Trammell bought from William Cameron & Co. a gin, mill, and fixtures worth about $1700, situated on a leased lot in the village of Armour, and also their lease upon said lot.    He also moved from another place owned by him some other machinery, worth $600, and placed it on said 15 acre tract.

On December 1, 1888, F. E. Trammell bought from T. D. Bounds, the owner, this 15 acres tract of land in Armour, for $350—all on time, and evidenced by two notes. one for $200, due December 20, 1889, and the other for $150, due December 20, 1890.    Bounds executed to Trammell a deed to the land, reserving a vendor's lien to secure the purchase money.    These two notes were paid off by money furnished by Alexander Broom, under an agreement between himself and F. E. Trammell, that when the last note should be paid off, the deed executed by Bounds to Trammell should be returned, and that Bounds should execute to Broom a deed for the land, and that he should hold the legal title to the land to secure the purchase money so furnished by him, until the same was paid back to him by Trammell.    The trade was thus consummated.    The deed from Bounds to Trammell was never recorded.    The said deed was given up by Trammell, and at his request, a deed executed by Bounds to Broom.    Trammell has never repaid the purchase money to Broom.    In September, 1888, Broom also bought a one-third interest in the machinery on the 15 acres tract of land.    The deed from Bounds to Broom was recorded in July, 1891.

1.    The first assignment of error presented by appellants attacks the conclusions of the court below, and is, in effect, that title was vested in the community estate of F. E. and Mary E. Trammell by the execution sale to T. J. Gibson, and by the deed from Gibson to F. E. Trammell, and that appellants obtained such title under their purchase at execution sale against him.

Under the foreclosure of the vendor's lien against Mary E. and F. E. Trammell, the land was sold to T. J. Gibson, who bought at the foreclosure sale, and thereby obtained the title.    When he sold to F. E. Trammell, the apparent onerous title was fixed in the community estate of Trammell and wife, and a purchase from F. E. Trammell by

an innocent bona fide purchaser, without actual or constructive notice, would be protected. Parker v. Coop, 60 Texas, 111. But such is not the case. F. E. Trammell was the trusted agent and trustee of Mary E. Trammell and her sister Mattie Burton, to invest their money which he held in his hands, in this tract of land, for their use and benefit. He did buy the land for them, paying all that was originally paid, out of their money. Instead of paying all the purchase money, he neglected to pay $275 of the amount, although he held in his hands for them largely more than that, and allowed the land to sell under a foreclosure of the lien, and it was bought in by Gibson, who deeded it to said F. E. Trammell for $475. At the time of said purchase, he held in his hands money belong to said Mary E. and Mattie largely more than the amount paid to Gibson. He was acting as their agent and trustee in saving the land for them, and fully recognized their rights to the property. Whether he had recognized their rights or not, under the facts, there would have been a resulting trust in their favor, and they could have enforced their claims. Appellants at the time of their purchase had actual notice of their rights, and obtained no title as against them. Parker v. Coop, 60 Texas, 114; Ilse v. Seinsheimer, 76 Texas, 459; Blum v. Rogers, 71 Texas, 668.

Appellants not only had actual notice of the separate rights of Mrs. Trammell and Mattie Burton to the land, but at the execution sale, they being part owners of the judgment, did not pay the purchase price, but credited the amount of their bid on the execution. It has been held that such a purchaser is not an innocent bona fide purchaser for value. McKamey v. Thorp, 61 Texas, 652; Ross v. Kornrumpf, 64 Texas, 394.

2. The same rule as to a resulting trust in favor of Mrs. Trammell will also apply to Mattie Burton. The land was originally bought for both of them, out of their joint funds in the hands of Trammell. Her rights were fully recognized by Trammell and wife, and her 100 acres of the land had been partitioned and set apart to her by metes and bounds, in 1883, seven years before appellants' purchase, and they had full notice of her rights before the sale.

3. The third assignment raises the same question discussed under the first and second, and need not be further considered.

4. Appellants contend, that a portion of the 480 acres tract was community property under the facts found in the court's twenty-second conclusion, which is as follows: "Prior to 1890, Ann Birch brought suit in the District Court of Limestone County, and recovered judgment against F. E. Trammell and M. E. Trammell for a one-third interest in the said 480 acres tract. From the said judgment the said F. E. Trammell and Mary E. Trammell took and perfected an appeal to the Supreme Court, giving a supersedeas bond therefor. The claim of Ann Birch was compromised pending the appeal. for two notes for $100 each, and said Ann Birch and her attorney, C. S. Hardy, then

made a deed to Mary E. Trammell for said one-third interest. The notes were signed by F. E. Trammell."

The 480 acres of land being the property of Mary E. Trammell and Mattie Burton, and so recognized and held, the fact that the outstanding claim of Ann Birch for an interest in the land was compromised and settled by Trammell and wife, and that in such settlement the husband signed the two notes for $100 each, the deed being taken to the wife and intended as her separate property, would not render the land community estate, a fortiori when the husband held in his hands as the agent and trustee largely more than enough of the wife's separate funds to pay the notes. Baker v. Baker, 55 Texas, 577. Long prior to this transaction Mattie Burton's 100 acres had been partitioned and set apart to her.

5. Under the fifth, sixth, and seventh assignments of error it is contended, that the homestead of Trammell and his family was not on the 480 acres tract, but on the 15 acres tract. The above conclusions by us, to the effect that the balance of the 480 acres not disposed of is the separate property of Mrs. Trammell, would render it unnecessary to consider this question, except for its bearing upon the other tract involved. The court below found that the homestead was on the 480 acres tract, and the conclusion is amply supported by the facts. If the 480 acres tract, after taking out the portions sold off and now owned by Sanders, Wallace, Duff, and Davis, and the 100 acres set apart to Mattie Burton (now Wooldridge), there remains 207 acres, which is 7 acres more than the homestead allowed by law, and which appellants would have a right to recover, if the claim of appellees was based wholly on the homestead right. But the property is clearly the separate estate of Mrs. Trammell, as well as the homestead.

6. The eighth assignment of error is as follows: "The court below erred in his fourth conclusion of law, and in rendering judgment against plaintiffs, because the facts found by him show that F. E. Trammell owned the 15 acres tract in Armour sued for herein, and that Alexander Broom only had a lien on same, and if the same was not the homestead of F. E. Trammell, then plaintiffs were entitled to recover same."

The court in its fifteenth conclusion of fact, found: "On December 1, 1888, F. E. Trammell bought from T. D. Bounds this 15 acres of land in Armour for $350, all on time, and evidenced by two notes, one for $200, due December 20, 1889, and one for $150, due December 20, 1890, and signed by F. E. Trammell. He, as grantee, received a deed from Bounds expressing the above consideration, and reserving a vendor's lien to secure the payment of the said notes. In January, 1891, F. E. Trammell paid off the last of these notes with the money of defendant Alexander Broom. This last note was paid off about the month after it was due. Trammell had paid both notes with Broom's money, under an agreement with Broom that when the last one was paid the deed executed by Bounds to Trammell should be re-

turned to Bounds, and then Bounds would execute a deed to Broom conveying the land.   To secure the payment of the money thus furnished by Broom, he was to hold the legal title to the land until such time as Trammell should repay him the money.   The deed from Bounds to Trammell was never recorded.   Trammell has never paid the money thus furnished by Broom.   Plaintiffs in this cause have never offered to pay Broom the money, or any part of it.   In September, 1888, Broom also bought a one-third interest in the machinery situated on the 15 acres.   The deed from Bounds to Broom was recorded in January, 1891.''

The pleading on the part of appellants shows a plain action of trespass to try title; and on the part of Broom, a disclaimer as to all the land except the 15 acres tract, and as to that a plea of not guilty. The only issue on this branch of the case is, the title to the 15 acres.   Whatever rights appellants acquired in this 15 acres of land was by reason of their purchase at execution sale, in October, 1890. The superior title at that time remained in T. D. Bounds, who had sold the land to F. E. Trammell, under an executory contract, the purchase money still being unpaid.   Appellants obtained at the sale whatever title Trammell owned in the land at the time of such sale; no more, and no less.   What was that title?   At that time the first note due to Bounds for the purchase money had been paid off and taken up by Broom, under an agreement between himself and Trammell that the legal title should be conveyed to him (Broom) by Bounds, and held by him until his money was repaid.   When the other note became due it was likewise paid off by Broom under such agreement, and the deed made to him by Bounds according to the contract.   Appellants bought at the execution sale only on equity, which never ripened into a title.

This being a contest over the title to the property under an action of trespass to try title, we must hold with the court below, that the title could only be obtained by appellants by payment of the purchase money notes held by Broom, which they neither paid nor offered to pay. The superior title being in Bounds, it could not be acquired by Trammell without payment of the purchase money notes.   His vendee or any party holding under him could not obtain a higher right than he possessed.   McBride v. Banguss, 65 Texas, 176; Foster v. Powers, 64 Texas, 248.

If Trammell, after the sale made by the sheriff to appellants, had paid the balance of the purchase money ($150) to Bounds, or if Broom had done this for him and held the title for his benefit, the plaintiffs would have the right to pay the purchase money, and have title under the same circumstances as they would had Bounds not conveyed; but this would be the extent of their right.   This is almost the exact language of Judge Stayton in the case of McBride v. Banguss, above.   In that case, McBride & Henry sought to recover a tract of land bought by them at execution sale against Banguss, who held the land under an executory contract of sale from Blades.   The purchase money had

not all been paid by Banguss to Blades, and after the execution sale, by an arrangement between the parties, the balance of the purchase money was paid to Blades by Mooring & Lyon, and he executed to them a deed for the property. The court said: "Under this state of facts are they entitled to recover against Mooring & Lyon, or any person holding under them? Would they be entitled to recover even against B. A. Banguss, had he, subsequent to their purchase at sheriff's sale, paid the balance due on the purchase money and taken a deed from Blades? It would seem that the plaintiffs under their pleadings and evidence would not be entitled to recover even as against Banguss, were he clothed with the legal title, for as against him they would not exhibit any superior right. The right which the plaintiffs acquired, at most, was but the right to have title to the land by paying the balance due for it. That was the only interest Banguss had when they purchased, and they surely acquired no right by their purchase other or greater than had the debtor whose interest was sold. And this was subject to be defeated by the failure of Banguss or his vendees to pay the purchase money still due, for upon such failure it was the right of Blades to rescind the contract made with Banguss and to sell the land to some other person, or even to him.

"A title subsequently acquired by Banguss would not inure to the benefit of those who had purchased whatever equitable interest he had at the time of the sheriff's sale, as would such subsequently acquired title inure to the benefit of one to whom Banguss might have conveyed the land by deed with warranty of title. So we think it immaterial, so far as the question of the right of the appellants to recover under the pleadings and evidence in the cause is concerned, whether Mooring & Lyon purchased the land in good faith with their own means under some agreement with Banguss to hold for his benefit; for, be this as it may, the legal title so acquired is superior to any title or right alleged or proved by appellants, and the equities of the defendants Mooring & Lyon, and those claiming under them, are as strong as any asserted by the plaintiffs. If Blades was in possession of the land, and had not conveyed the legal title to Mooring & Lyon, and this action was against them alone, the plaintiffs could not recover unless they tendered to him the balance of the purchase money, and showed some good reason why it was not sooner paid. Blades, by conveying to Mooring & Lyon, indicated his intention to rescind the contract claimed to have been made with Banguss; and his vendees, even if they had notice of that contract, had rights certainly equal to those Blades had prior to the conveyance, and it would be necessary for the plaintiffs to have paid the purchase money, or to have shown some good reason why they did not, and to tender it before they could recover.

"This they do not, although many years have elapsed since the money was due. If Banguss, after the sale made by the sheriff, had paid the balance of the purchase money and obtained a deed from

Blades, or if Mooring & Lyon had done this for him and held the title for his benefit, the plaintiffs would have had the right to pay the balance of the purchase money, and have title under the same circumstances as they would had Blades not conveyed; but this would be the extent of their right. In any event, they would have to pay or tender the balance of the purchase money, for one holding under Blades has all the rights he had."

In this case no part of the purchase money due by Trammell to Bounds had ever been paid at the time of appellants' purchase under execution sale, except by Broom, who had taken up the first purchase money note under his agreement with Trammell, who has never paid a dollar of the purchase money, and who could never acquire the title to the property without such payment. Even if the first purchase money note had been taken up by Trammell himself, and extinguished, the last note was still unpaid at the time of appellants' purchase at sheriff's sale, and the superior title being in the vendor, Bounds, was not acquired by appellants, and could in no state of the case be acquired by them, without payment of such purchase money. They have not made or offered such payment.

7. It is unnecessary for us to consider the ninth assignment of error, which complains that the court allowed the mortgage of J. Nussbaum to be foreclosed upon 100 acres of the 480 acres tract. It has been shown that appellants acquired by their purchase no title to that tract, and Trammell and wife have not complained.

The tenth, eleventh, and twelfth assignments have been fully passed upon in our consideration of the foregoing assignments.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered January 16, 1895.