KINGMAN-TEXAS IMPLEMENT CO. v. HERRING NAT. BANK.

(Court of Civil Appeals of Texas. Amarillo. Jan. 4, 1913. On Motion for Rehearing, Feb. 1, 1913.)

1. CONTINUANCE (§ 51*)—GROUNDS—ILLNESS OF COUNSEL.

The pleadings of defendant were signed by P., M., and another attorney; but it did not appear whether any other than M. was at the trial. Defendant was ably represented by counsel on cross-examination; and it was not shown in the motion for new trial how he was injured by the absence, because of sickness, of its principal counsel from the trial. The case had been twice continued before the present application was made. *Held*, that there was no abuse of discretion in denying the continuance; district court rule 49 (142 S. W. xxi) provid-

ing for continuance for absence of counsel, in the court's discretion upon cause shown.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 129–131; Dec. Dig. § 51.*]

2. JUDGES (§ 45*) — DISQUALIFICATION—RELATIONSHIP TO PARTIES.

The fact that the trial judge in garnishment proceedings was the father-in-law of its cashier, who was a stockholder in the garnishee bank, would not disqualify the judge, under Const. art. 5, § 11, because of affinity or consanguinity within the legally prescribed degree; the fact that, in the event of the son-in-law's death, the judge's daughter would inherit from him, and the judge, in the event of her death without issue, would inherit from her, being too remote to furnish a disqualifying interest in the judge.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 208–212; Dec. Dig. § 45.*]

3. APPEAL AND ERROR (§ 846*)—RECORD.

Where the record shows no findings of law or fact by the court, who acted as a jury, other than the judgment and statement of facts, the judgment must be affirmed, as against an objection that it is not supported by the evidence, if the record shows a state of facts which will support it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3347–3362, 3366; Dec. Dig. § 846.*]

4. HUSBAND AND WIFE (§ 133*)—SUFFICIENCY OF EVIDENCE—OWNERSHIP OF PROPERTY.

Evidence, in proceedings to garnishee money deposited in a bank, held to sustain a finding that the money was deposited as the separate property of the wife of the judgment debtor.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 487–494; Dec. Dig. § 133.*]

5. HUSBAND AND WIFE (§ 121*)—SEPARATE PROPERTY.

Where a married woman's money is invested in land in her husband's name, she owns, in her separate right, a part of the land proportionate to the amount of her funds invested therein.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 432, 435–441; Dec. Dig. § 121.*]

Appeal from District Court, Wilbarger County; S. P. Huff, Judge.

Action by the Kingman-Texas Implement Company against the Herring National Bank, as garnishee, and others. From a judgment against plaintiff as to the money sought to be garnisheed, it appeals. Affirmed.

M. W. Plowman, of Dallas, L. H. Mathis, of Wichita Falls, and Cecil Storey, of Vernon, for appellant. Harry Mason, L. P. Bonner, and J. Shirley Cook, all of Vernon, for appellees.

HATHAWAY, Special Judge.  On June 2, 1910, the appellant, Kingman-Texas Implement Company, recovered a judgment in one of the district courts of Dallas county against A. D. Davis and E. P. Hutchens, individually, and as a firm of Davis & Hutchens, for the sum of $4,399.32; and on August 4, 1910, appellant sued out a writ of garnishment against the Herring National Bank of Vernon, Wilbarger county, requiring it to answer as to its indebtedness, etc.,

to the defendant in the judgment, A. D. Davis. The garnishee bank answered on November 14, 1910, and the answer returned to the Dallas district court and filed on November 15th, in which it denied that it was indebted to A. D. Davis in any sum, and had no effects, etc., belonging to A. D. Davis; but the answer of the garnishee further showed that on June 27, 1910, A. D. Davis deposited in the bank the sum of, $6,000 to the credit of E. S. Davis, who is shown by the evidence to be the wife of A. D. Davis. The answer further shows that, after the deposit was made, from time to time checks had been drawn against the deposit before the service of the writ, and the money paid out, reducing the account, to the sum of $2,158.32, which last sum was still on deposit in the name of E. S. Davis. The Kingman-Texas Implement Company filed its contest to the answer of the garnishee, and asked that A. D. Davis and wife, E. S. Davis, be made parties to the contest. The contest proceedings were transferred to and filed in the district court of Wilbarger county on December 30, 1910. The contest alleges that the $6,000 was fraudulently placed in the bank by A. D. Davis in the name of his wife, E. S. Davis, for the purpose of concealing it from and defrauding his creditors, including plaintiff, and alleging that the money was the money of A. D. Davis and subject to the payment of his debts, as well as the debts of the firm of Davis & Hutchens, and that the claim of E. S. Davis, if any, is false and fraudulent.

At the September term of the Wilbarger district court, the Kingman-Texas Implement Company and A. D. Davis and E. S. Davis joined issues, Mrs. E. S. Davis specially alleging that the money shown by the answer of the garnishee ($2,158.32) to be in the bank was her separate money and her separate individual funds, owned by her in her own separate right and estate, separate and apart from her husband, A. D. Davis, and denied that it was liable for the payment of appellant's claim, and prayed that the money be required to be paid over to her. The cause was tried, without the intervention of a jury, at the February term of the court, 1911, and judgment rendered for Mrs. E. S. Davis and her husband, A. D. Davis, for the money in the hands of the garnishee bank, for the separate use and benefit of E. S. Davis.

[1] Appellant's first assignment of error complains of the action of the trial court in refusing to grant it a continuance on its application made at the February term, 1912. The application is not based upon any statutory grounds for continuance, but is based upon the grounds that M. M. Plowman, leading counsel for appellant, and who resided in Dallas, Tex., was absent on account of serious illness, and could not be present at

the trial at that time; that Plowman was the general attorney for appellant; and that he had investigated the law and facts, applicable to the case, to the extent of his ability, and fully expected to be present when the case should be called for trial. The application was made by L. H. Mathis, one of the attorneys of record, properly sworn to. Mathis alleges that his employment was to the effect that he should only act as assistant counsel in the actual trial of the case, and that Plowman should prepare the case for trial and act as leading counsel during the trial.

It appears from the application that George H. Plowman was originally leading counsel for appellant; that he died prior to the September term of the court, 1911; and that he was succeeded by M. M. Plowman as general and leading counsel; that the Hon. R. W. Hall, now of this court, was associated with said George H. Plowman as assistant counsel; and that, on being elected to this court, he was succeeded by L. H. Mathis as assistant counsel. L. H. Mathis further states, in his application for continuance, that because it was not expected of him, and because he has not undertaken, under his agreement with plaintiff or its general attorney, to prepare this case for trial by making a full investigation of the facts or the law, he is wholly unprepared to develop the facts or properly present the plaintiff's rights under the law in the trial of the case; and that a trial, in the absence of said Plowman, would result in a great hardship to plaintiff.

Rule 49 for, the government of trials in the district courts of this state (142 S. W. xxi) provides: "Absence of counsel will be no good cause for continuance or postponement of the cause when called for trial, except it be allowed in the discretion of the court, upon cause shown, or upon matters within the knowledge or information of the judge, to be stated on the record"—and has continuously been the rule since the adoption of rules by our Supreme Court, December 1, 1877. 47 Tex. 626. The record shows that the case was continued at the February term of the court, 1911, by operation of law, and was continued at the instance of appellant at the September term, 1911, for the want of a witness; hence this was not the first application for a continuance.

We do not think the trial court abused his discretion in refusing to grant the continuance. Watkins v. Atwell, 45 S. W. 405. The record in this case shows that the pleadings of appellant, tendering issue filed on September 14, 1911, were signed by three counsel for appellant, viz., M. M. Plowman, Cecil Storey, and L. H. Mathis. Whether more than one Mr. Mathis was present at the trial, the record does not show; but the statement of facts does show that appellant was ably represented by counsel in the cross-examination of witnesses. The record further shows that the case was tried on the 17th day of February, 1912. On the 19th a formal motion for a new trial was filed; and on March 2d an amended motion for new trial was filed. While this amended motion complains of the refusal of the continuance, it does not set up any fact or reason why the refusal was error, further than the reasons set out in the application itself, although more than 12 days had elapsed since the trial for counsel to discover any injury that may have been done appellant by reason of the absence of its leading counsel. None is set up or shown in its motion for new trial. Hagerty v. Scott, 10 Tex. 529. We therefore overrule appellant's first assignment of error.

[2] Appellant's second assignment of error complains of the action of the trial court, Hon. S. P. Huff, in holding that he was qualified to try the case. Appellant, by proper bill of exception, raises the question of disqualification of the learned judge, who tried the case, in that it is shown by the bill and by the facts that C. B. Johnson was at the time of the trial, and had been for some months prior thereto, a stockholder in and the cashier of the Herring National Bank, garnishee, and was at the time related to the judge trying the case by affinity within the prohibited degree. Our Constitution, art. 5, § 11, declares that: "No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, by affinity or consanguinity within such degree as may be prescribed by law." The Legislature has fixed the relationship within the third degree. If the bill of exceptions and facts show that the judge and C. B. Johnson were related to each other within the prohibited degree, then the question arises whether Johnson, the son-in-law of the judge, was a party to the suit within the meaning of the Constitution; if he was not, the judge was not disqualified. Our Supreme Court, in Winton v. Masterson, 87 Tex. 203, in answering a certified question from the Court of Civil Appeals for the First District, construes this provision of the Constitution; and Justice Gaines, in rendering the opinion, says: "The words 'party' and 'parties,' when used in connection with suits or actions, are technical words, the meaning of which is as certainly fixed as any words in the language"—then citing with approval Bank v. Cook, 4 Pick. (Mass.) 411, in which it was said: "We are to ascertain the true meaning of the Legislature in the use of their statute, and we are to consider them, when legislating upon subjects relating to courts and legal process, as speaking technically, unless, from the statute itself, it appears that they made use of the terms in a more popular sense. The word 'party' there is unquestionably a technical word, and has a precise meaning in legal parlance. By it is understood he or they by or against whom a suit

is brought, whether at law or in equity, the party plaintiff or defendant, whether composed of one or more individuals, and whether natural or legal persons. They are parties to the writ, and parties on the record; and all others who may be affected by the writ, indirectly or consequentially, are persons interested, but not parties." Quoting further from the opinion, the court says: "Interest of a judge in a matter of litigation disqualifies him; but his disqualification, on account of some interest other persons may have, under the terms of the Constitution, arises only when such persons are related to him within the prescribed degrees, and are parties." Thus we see that it is not the question of relationship that makes the disqualification; but they must be parties to the suit. Now it cannot be said that Johnson is either a necessary or proper party to this suit, whether named as such or not. We therefore conclude that a judge, being related to a stockholder in a corporation which is being sued, although an officer in the corporation, is not disqualified on account of his relationship to try the case. Lewis v. Hillsboro Roller Mill Co., 23 S. W. 338; Wise County Coal Co. v. Carter, 3 Willson, Civ. Cas. Ct. App. § 306; Houston Cemetery Co. v. Drew, 13 Civil Apps. 541; 23 Cyc. 585D.

Counsel for appellant in their brief insist that the rule should be different where the corporation is a national bank; but we see no reason for a different rule. They rely upon the case of National Bank v. McGuire, found in 12 S. D. 226, 80 N. W. 1074, 47 L. R. A. 413, 76 Am. St. Rep. 598. This is a South Dakota case, where the trial judge's wife was a stockholder in the plaintiff bank. The Supreme Court of South Dakota, in passing upon the disqualification of the judge, held him to be disqualified; but the opinion shows that the court held that the judge was interested, and did not dispose of the case on the grounds of relationship, but held that the wife's interest was the husband's interest. We therefore hold that the trial judge was not disqualified in this case.

[3] Appellant's third assignment raises the question of the sufficiency of the evidence to support the judgment. The case was submitted to the court without the intervention of a jury. The record shows no findings of law or facts by the court other than the judgment itself and the statement of facts. Then, if a state of facts is shown in the record that will support the judgment, it must be affirmed.

[4] The only issue of facts is whether the $2,158.32, reported by the garnishee bank as being on deposit, is community property of appellees A. D. Davis and his wife, E. S. Davis, or is the separate property of the wife, Mrs. E. S. Davis. The uncontroverted facts show that, at the time of the marriage of Mrs. Davis to A. D. Davis, she was entitled to an estate from her grandfather; that her father was the guardian of her estate; and that he and her brother, prior to her marriage, had been negotiating for the purchase of 160 acres of land for her, but the trade had not been closed. Soon after her marriage to A. D. Davis, in December, 1902, she received a draft for $717 from her grandfather's estate, which was placed in the bank at Chillicothe to her credit; and soon after that the trade was closed for the 160 acres of land, by the terms of which $500 was paid in cash out of her money, and the grantee in the deed assumed to pay two $80 notes then against the land, and two $150 notes were executed for the balance. The deed was taken in the name of the young husband, and the notes executed by him alone. After this the evidence shows that appellee Mrs. Davis received another sum from her grandfather's estate, and later on her father had died, and she was entitled to a small sum of $160 or $170 from his estate. The proof shows that the two $80 notes and one of the $150 notes were paid out of the money received from the grandfather's estate of Mrs. E. S. Davis, and that the other $150 note was paid out of the part she was to receive from her father's estate; thus placing the whole title to the 160 acres in her, although the deed was taken in the husband's name.

Appellees occupied this land for several years as their home, when they sold it for $2,200, and, at the time of the sale, negotiated the purchase of another tract of 320 acres, agreeing to pay the sum of $3,480. In making the sale of the 160-acre tract, the sum of $500 was received in cash, and the balance was taken in four notes of the purchaser of $425 each. In purchasing the 320 acres, appellees paid $780 cash, and gave three notes for $900 each. The cash payment was made by using the $500 received on the sale of the 160 acres, and $280 borrowed from the brother of the wife, and that sum paid back by a sale of one of the $425 notes. Later the remaining three $425 notes were sold for $1,275; and out of the proceeds one of the $900 notes and interest on all paid. While the testimony of appellees A. D. Davis and wife, E. S. Davis, is that the whole of the $2,200 arising from the sale of the 160-acre tract was invested in the 320-acre tract, the evidence clearly and distinctly shows that at least $1,680 of that $2,200 was invested in the original purchase money of the 320 acres, thereby giving the wife, E. S. Davis, a proportional interest of $21/43$ of the land. In 1910 appellee Davis sold the 320-acre tract for $12,800. A. D. Davis used $6,800 in payment of community debts; and at the instance of his wife, E. S. Davis, deposited the remainder, $6,000, in the appellee bank to the credit of the wife. This is the $6,000 reported by the garnishee bank as having been deposited there on June 27, 1910, out of which had been drawn all except $2,158.32, when the writ of garnishment was served. This evidence is without contradiction, except in so far as witnesses usually contradict them-

selves in cross-examination; besides, they stated facts that could have been easily verified or disproved by the bank books and by the persons referred to by the appellees and their witnesses, and nothing is suggested in the motion for new trial that appellant had discovered any evidence to contradict them, although more than 12 days elapsed between the date of the judgment and the action on the motion for new trial. While the deeds to both tracts of land were taken in the name of the husband, the facts show that the question of whose name the land should be taken in was discussed by the husband and wife at the time of the purchase of the 160 acres, and was finally decided that it be taken in the name of the husband.

[5] It is well settled, by a long line of authorities in this state, that when the funds of a married woman are invested in land, although in the husband's name, the wife owns in her separate right in the land in proportion to the amount of her funds. Blum v. Rogers, 71 Tex. 669, 9 S. W. 595; Carter v. Bolin, 30 S. W. 1084; Evans v. Purinton, 12 Tex. Civ. App. 158, 34 S. W. 350; Cobb v. Trammell, 9 Tex. Civ. App. 527, 30 S. W. 482; Cabell v. Menczer, 35 S. W. 206.

Believing that the facts not only authorized but required that the trial judge should render the judgment that he did render, and finding no errors in the record, we believe the judgment should be affirmed; and it is so ordered.

#### On Motion for Rehearing.

Appellant, in its motion for rehearing, still insists upon all its assignments of error. After a further careful examination of the record, we see no reason for changing our opinion rendered in this case on a former day of this court. Counsel for appellant urge in this motion that a continuance should have been granted by the trial court on account of the absence of leading counsel, and in their statement say: "That L. H. Mathis and Cecil Storey [local counsel trying the case] were unprepared to develop the facts or properly present plaintiff's rights under the law on account of the fact that they were unfamiliar with the evidence." But they fail to point out any fact that was not developed, or any right under the law that was not properly presented.

No new authorities are cited or argument made on the question of the disqualification of the trial judge. The contingency that the Herring National Bank might become insolvent and require an assessment against all the stockholders cannot make the relative of the trial judge a party to this suit; besides, such assessment could not be made by the district court of Wilbarger county. The fact that, in event the son-in-law should die, the wife, the daughter of the trial judge, would inherit from him, then she in turn die without will or issue, the judge would inherit from her, is too remote, inconsequential, and uncertain on which to base any interest of the trial judge, either present or prospective, as said in case of Bank v. Cook, 4 Pick. (Mass.) 414: "The execution goes against the corporate property, and the individual members can be affected consequentially only in proportion to their interest in the corporate property."

We think the evidence is abundant and entirely sufficient to sustain the judgment rendered in the lower court. The facts clearly and distinctly trace the funds of Mrs. Davis through all their mutations into the last land sold, and into the $6,000 deposited in the Herring Bank in her name. Counsel are mistaken in their statement when they say the evidence shows that A. D. Davis placed the money in the bank without the "consent or knowledge of his wife." Mrs. Davis, in her testimony, says that, when the 320 acres of land was sold for the $12,800, the $6,000 was turned over to her as her money, and that she told her husband to place it in the Herring Bank in "my name, for my protection."

Finding no errors in the record, the motion for rehearing is in all things overruled.

Hon. A. B. MARTIN was appointed Special Chief Justice, in place of HUFF, C. J., disqualified. Hon. M. J. HATHAWAY was appointed Special Associate Justice, in place of HALL, J., disqualified.