SAM EVANS V. W. W. PURINTON ET AL.

No. 2019.

**1. Separate Property of Wife—Declarations of Husband.**

Declarations of the husband as to the ownership of lands the title to which stands in the name of the wife as her separate property, are not admissible to impugn her title.

**2. Same—Burden of Proof.**

Where the recitals in a deed conveying land to the wife show it to be her separate property, the burden of tracing in the lands the investment of community funds, to the extent either of the entire purchase money or of some definite portion thereof, rests upon the party assailing the deed to disprove the truth of the recitals.

**3. Same—Profits from Land not Community Property, When.**

Where the husband, as the agent of the wife, invests her separate funds in the purchase of lands which enhance in value, and which are sold by him for her, and the proceeds reinvested in other lands the title to which is taken in her name and as her separate estate, such other lands are the sole property of the wife, and the profits resulting from such investments and sales do not, as to creditors of the husband, become community property.

**4. Same—Increase of Land—Husband's Management of Wife's Property.**

Enhancement in the value of land due to the growth of population and demand is "increase of land," which, under the statute, remains the separate property of the spouse owning the land, and the service of the husband in making investments in land and sales thereof for the wife is but the discharge of the duty imposed upon him by law in the management of her separate property.

**5. Same—Fraud of Husband—Mingling Separate and Community Funds.**

The wife can not, at the instance of a creditor of the husband, be deprived of her interest in lands purchased by the husband in part with her separate funds and in part with community funds, because of the fraud of the husband in mingling such separate and community funds in the purchase, where it is not shown that she participated in such fraud.

**6. Same—Borrowed Money and Purchases on Credit.**

Money borrowed by the husband for the benefit of the wife's separate estate, to be repaid out of her separate funds, is not community property; nor would property purchased on a credit by the wife for her separate use and benefit necessarily be community property.

Appeal from Tarrant. Tried below before Hon. S. P. Greene.

*M. D. Priest, W. W. Flood* and *J. H. Cobb,* for appellant.—Profits made by the husband in a business carried on in the name of the wife, with her separate funds, is community property. Glasscock v. Hamilton, 62 Texas, 153; Middlebrook v. Zapp, 73 Texas, 31; Braden v. Gose, 57 Texas, 41; Green v. Ferguson, 62 Texas, 529; Epperson v. Jones, 65 Texas, 425; Cleveland v. Cole, 65 Texas, 402.

When an insolvent husband, for the purpose of concealing the community estate, and hindering, delaying and defrauding his creditors, mingles the community estate with his wife's separate estate, with the consent of the wife, and property is purchased with a portion of such commingled fund, such property may be subjected to the husband's debts; and when such facts are shown it devolves upon those claiming such property as the separate property of the wife to point out clearly how much of her separate funds entered into the same, and unless they do so, the whole of it becomes subject to the husband's debts. Epperson v. Jones, 65 Texas, 425; Jones v. Epperson, 69 Texas, 586; Smith v. Bailey, 66 Texas, 554; Claflin v. Pfeiffer, 76 Texas, 469; Glasscock v. Hamilton, 62 Texas, 153; 1 Am. and Eng. Enc. Law, 58, note.

When a creditor seeking to subject community property to the payment of his debt shows that the property was paid for with commingled funds of the community and separate estate of the wife, it devolves on those claiming the exemptions of the separate estate to point out how much separate and how much community funds went into it.

*Bomar & Bomar,* for appellees.—1. Declarations of a husband cannot bind the separate estate of the wife, and are not admissible against her. Clapp v. Engledow, 82 Texas, 291.

2. A husband has a right to give his services to his wife, even as against his creditors, and purchasing lands in wife's name, with recitals of separate consideration and conveyance to her separate use, gives his services to her, together with all profit on the trade, as well as rents, etc., of the land, and such cannot be a fraud, because he has a right to give his services. King v. Voss, 11 Pac. Rep., 281; Abbey v. Digo, 48 N. Y., 343.

3. The right to own carries the right of use, as well as the right to speculate, and the increase in value is not like the rents, and speculation

in wild lands, as was done in this case, produces no revenue except by increase in value.    Certainly, equity should protect married women whose husbands are hopelessly indebted, and if it don't, and the creditors can continually reach the rents, her separate property had as well be subject to the husband's debts at once.    McCutchen v. Purinton, 84 Texas, 603; Nichol v. Eaton, L. Ed. U. S., Book, 23, p. 255; Hall v. Hall, 52 Texas, 298; Braden v. Gose, 57 Texas, 37.

TARLTON, CHIEF JUSTICE.—The parties to this appeal are Sam Evans, appellant, plaintiff in the court below, and W. W. Purinton (husband of M. M. Purinton, deceased), Mattie E. Purinton, Arthur B. Purinton, Annie E. Bomar, and Mattie E. Broad, children and heirs at law of M. M. Purinton, deceased, Annie E. Bomar and Mattie E. Broad being joined respectively by their husbands D. T. Bomar and John W. Broad.

The suit, filed October 25, 1888, is an action of trespass to try title, involving certain lands lying in Wichita County, Texas.

In 1877 W. W. Purinton became insolvent, and has since so remained. On September 20th of that year, in the District Court of Grayson County, a judgment was rendered against him in favor of John K. Miller for the sum of $4283.92.    On May 27, 1886, by virtue of an execution issued upon this judgment, the lands in controversy were levied upon and sold as the property of W. W. Purinton.    The appellant became the purchaser.    The contention asserted by him is that the property was of the community of W. W. Purinton and his wife, M. M. Purinton.    On the other hand, the appellees claim that the lands were of the separate estate of the wife, and were not subject to the judgment levy and execution under which the appellant claims.

In addition to the formal allegations in an action of this character, the plaintiff averred specially that the defendant W. W. Purinton, an insolvent, had for the purpose of hindering, delaying and defrauding his creditors, caused a large amount of real estate situate in the County of Wichita, the title to which by deed was vested in him, to be transferred to his mother, M. H. Purinton, by three deeds, two dated March 17, 1877, and the other dated April 24, 1877, recorded April 9 and May 18, respectively; that these transfers were without valid consideration; that the mother, M. H. Purinton, knew the fraudulent character of these transfers, and took the conveyances for the purpose of placing the land beyond the reach of the creditors of W. W. Purinton, and by way of carrying out this design devised the lands to M. M. Purinton; that W. W. Purinton afterwards sold the lands, and with the money thus realized and other funds belonging to him, he in 1878 embarked in the business —continued until the institution of this suit—of a land agent, in the name of his wife, M. M. Purinton, accumulating a large fortune, about $70,000, and that the proceeds of the lands thus fraudulently conveyed to M. H. Purinton and the profits arising from speculating in them be-

came the consideration with which the lands in controversy were acquired; that his wife in fact owned no separate estate.

The evidence does not sustain the allegations of fraud thus relied upon. The testimony justifies the following conclusions of fact:

In 1881, W. W. Purinton was engaged in the business of a real estate agent. At that time his wife, M. M. Purinton, had acquired, through the will of M. H. Purinton, the mother of W. W. Purinton, certain real estate. She realized in her own separate right out of this property the sum of about $8100. She also owned in her separate right, by way of inheritance from her father, certain property not less than $1300 in value, nor more than $2200.

After the death of M. H. Purinton in 1880, and after the wife came into the possession of what she received under the will of M. H. Purinton, W. W. Purinton devoted most of his time to the care and attention of the property belonging to her or claimed by her. This course he continued for several years. In the meantime he sold lands on commission for other parties, but the commissions thus realized did not exceed $500 a year, and they were applied to defraying the expenses of his family, in connection with moneys realized from the sale of lands claimed to be the separate property of his wife. The separate money of his wife he proceeded to invest in real estate, the deed in every instance reciting the title to be for the separate use and benefit of M. M. Purinton. He thus bought and sold lands from February, 1881, until May, 1887. His course of dealing may be best described in his own words, the effect of which is not overcome by anything found by us in the record: "After the death of my mother, and after my wife came into the possession of what she received under the will of my mother, I began to sell the lands and to re-invest the proceeds in other lands, and to keep (account of) what money she had invested in wild lands, and so continued to sell and invest whenever a fair profit was offered." All conveyances were made in her name and by her, he joining.

All the property standing in the wife's name, including the property in controversy, was purchased with the proceeds of the investment and re-investment made from what M. M. Purinton received under the will of her mother, and from what she received from her father and her father's estate. The business thus conducted by Purinton, or the management by him of the property claimed by his wife, was profitable from the beginning.

From a verdict and judgment in favor of the children and heirs at law of the wife M. M. Purinton, this appeal is prosecuted.

*Opinion.*—We are of opinion that the testimony the exclusion of which is complained of in the third assignment of error (first urged) did not tend to show fraud in the transfers from W. W. Purinton to his mother, M. H. Purinton. The proffered evidence of W. W. Purinton showed that the conveyances to his mother were upon a valuable and bona fide consideration. It tended rather to repel than to justify the

inference of unfair dealing.  We find it unnecessary to consider the applicability of the statute of limitation invoked by the appellees in this connection, as we hold that the testimony was immaterial and would not have benefited appellant had it been admitted.

The testimony referred to in the fourth and fifth assignments was properly excluded.  It consisted in certain supposed declarations of W. W. Purinton, the husband, tending, as appellant contends, to show that the land, the title to which stood in the name of the wife, M. M. Purinton, as to her separate use and benefit, was really of the community estate of herself and her husband.  Had the lands then standing in the name of the wife as for her separate benefit been conveyed to her directly by the husband, his declarations impugning her title would have been clearly inadmissible.  De Garza v. Galvan, 55 Texas, 53.

Is this conclusion the less applicable because of the fact that the title had been placed in her by other parties by means of purchases negotiated by the husband expressly acting as her agent in the investment of her separate funds?  The declarations of an agent, to bind the principal, must be within the scope of his agency; it is difficult to see how any declarations of the husband denouncing the title of the wife in her separate property could be within the scope of his agency, such declarations being in hostility to the relation by virtue of which they purport to be made.  McKay v. Treadwell, 8 Texas, 180; Clapp v. Engledow, 82 Texas, 291.

The statements of Purinton were made subsequent to the conveyances to his wife putting the title in her to the lands referred to in the statements.  Besides, the statements of the letter and of the depositions taken in another case, the exclusion of which is the subject of this assignment, had they been admitted, could not have probably affected the result of this suit.  The expressions of Purinton contained in them were wholly consistent with the existence and recognition of the separate title of the wife, and could not reasonably be said to impugn it.

The fourth paragraph of the court's charge, of which complaint is urged in the fourteenth assignment of error, imposes the burden upon the plaintiff (as the deeds recite the title to be in the separate estate of the wife) of tracing in the lands conveyed the investment of the community funds to the extent, either of the entire purchase money, to justify a recovery for the entire land, or of some definite portion of the purchase money, to justify a recovery for any definite interest in the tracts of land involved, or any one of the tracts.  We are of opinion that the correctness of the propositions contained in this instruction follows logically from the doctrine recognized in this State, that where the title stands as in these deeds, the burden rests upon the party assailing them to disprove the truth of the recitals.  McCutchen v. Purinton, 84 Texas, 603; Purinton v. Gunter, 3 Texas Civ. App., 525.

If this burden is properly imposed when there is question of the title to the entire land affected by the recitals, why does it not apply as to any part thereof?  Does the burden shift, and does the title of the wife

fail as to the entire land, upon proof by the assailant of the conveyance that an undefined part of the purchase money, however small and indeterminate, entered into the purchase? We think that the court was correct in devolving upon the plaintiff the task of tracing the fact and the quantum of the community investment, to overcome the presumption incident to the recitals of the deeds.

But if we be mistaken in this conclusion, we would not, under the facts of this case, reverse the judgment. The court in this paragraph of the charge had in mind, as community funds entering into the purchase of the land, certain profits accruing during the course of dealing by the husband, W. W. Purinton, continuing for several years, consisting, as indicated in our conclusions of fact, in the first instance, in the investment of the wife's separate money in lands—in the sale of these lands and in the re-investment, frequently repeated, of the proceeds of the land thus sold, increased by profits accruing from the investment. That such was the court's view is manifested from the clause in the fifth paragraph of the charge wherein the jury are instructed that if the "husband, with the consent and acquiescence of the wife, takes her separate estate and uses it as a fund with which to carry on a business, either in his own name or in the name of his wife, then the profits of such business will become community property." This proposition is doubtless correct with reference to a commercial or mercantile business. Mitchell v. Mitchell, 80 Texas, 101, 114, and authorities cited.

We are of opinion that this rule does not apply to the management of the husband which consists in the negotiation by him, with skill great or little, or for a period long or short, of sales of land the separate property of his wife, with identified profits arising out of the proceeds of such land. As applied to land a different rule from that which obtains as to the profits arising from the purchase and re-purchase, the sale and resale, of goods or personal property, of which the original stock was purchased with the separate means of the wife. By our law, the increase of all land the separate property of either of the spouses (unlike the increase of money or other personal property) remains the separate property of that spouse. Art. 2851, Sayles' Civil Statutes.

In this case it must be regarded as uncontroverted that the land standing in the name of M. H. Purinton, the mother, at the death of the latter became by devise the separate property of the wife, M. M. Purinton. It became, then, the duty of the husband as such to manage this separate property. If one of the tracts thus acquired increased in a year fifty per cent in value, and through the negotiations of the husband, charged by law with the management of the property, was sold by the wife, joined by her husband, at a profit thus estimated, this profit would but represent the increase of the land; and a second tract purchased with the proceeds of the first, representing the value thereof, measured by its original value plus the profits at the date of the sale, would, we think, be impressed with the character of separate property.

This view is not believed to be in conflict with the rule of our Su-

preme Court established in De Blane v. Lynch, 23 Texas, 25, and in the numerous cases following it.   In that case, in stating the doctrine to be that crops raised on land the separate property of the wife, by the labor of slaves also her separate property, are community property of the husband and wife, the court uses the following language:   "If it be admitted, that the 'increase of land' meant by our statute, is the product of the soil itself, then it would follow, that a crop grown on the land of her husband, by the labor of the slaves of the wife, would be the separate property of the husband, because it was the 'increase' of his land. The husband has, by the statute, the control and management of the separate property of the wife; and if the husband owned land, as separate property, and the wife owned slaves, as separate property, the husband could always employ the wife's slaves in the cultivation of his own land, and thus add to his separate property by the use of her separate property."

It will be thus noted that the foundation of the doctrine there held is the protection of the wife's separate estate.   Here the application of the rule to the increased value of the wife's land represented by the profits. realized from its sale and re-invested in other land, taken in her name, would result, not in the protection of the separate property, but in its. loss, to the extent at least of the increase of her land represented by the profits accruing from the sale and applied in re-investments.

It will be further noted that the increase in the value of these lands. is to be ascribed rather to the operation of the laws of trade, due to the growth and prosperity of the country, than to the labors of the husband. These labors consisted only in the negotiations of the sales and in the embracing with watchful eye of such opportunities as presented themselves for profitable sales of the wife's estate and its profitable reinvestment.  Such services seem to us to be reasonably within the scope of the duty charged by law upon the husband of managing the wife's property. In our opinion, the rendition of such services can not be said to impart. a community character to the property thus acquired, because the labor performed in rendering them is but an incident to the sole management of the wife's separate property incumbent under the law upon the husband.

A, a penniless husband, discovers after his marriage with. B, the wife, that the latter owns in her own separate right wild lands of the value of $5000.    In the course of a year the demand for land, due to the impulse of a growing population seeking homes, grows in value to the extent of $10,000.    Can creditors complain that the insolvent husband should discover purchasers for this land, or any part of a particular tract thereof; that he should negotiate its sale, and by means of the conveyance by his wife reinvest in other lands the profits thus realized?    We think not. The husband's business under such circumstances is but the management of the wife's separate property, in the discharge of a duty which under the law he owes to her and to her property.    Such was substan-

tially the business conducted during a series of years by Purinton, as disclosed by the record in this case.

The court erroneously, as we think, instructed the jury that profits arising from the sale of the wife's lands, under such circumstances, became the community property of the husband and the wife; but this error inured to the benefit of the appellant, and hence detracts but the more from the merits of this appeal.

The seventh special instruction asked by the plaintiff was properly refused. It is as follows: "If the jury believe from the evidence that during the lifetime of M. M. Purinton she engaged in the business of speculating in lands, through her husband as her agent, and that while engaged in said business a profit or profits were realized out of said business, such profits would be the community property of W. W. Purinton and M. M. Purinton; and if the jury believe from the evidence that profits were made by the said W. W. Purinton in the course of his said business as agent of his wife, and that such profits entered into the purchase of any of the lands in controversy in this suit, you will as to such lands find for plaintiff."

The charge in effect required the jury to find for the plaintiff as to the entire land into the purchase of which the profits referred to had entered, without regard to the quantum of the purchase money thus entering, and without regard to whether the separate funds of the wife were to any extent utilized in the acquisition of the property.

Special charge No. 8 requested by the plaintiff was properly refused. It reads thus: "If the jury believe from the evidence that the separate property of M. M. Purinton and the community property of herself and W. W. Purinton has been intermixed, and that the fund so constituted was invested in the property in controversy herein, and that the title thereto was taken in the name of M. M. Purinton for the purpose of placing the property beyond the reach of his creditors, and for the purpose of delaying, hindering and defrauding the creditors of the said W. W. Purinton, then you should find for the plaintiff for the lands so purchased."

We find no testimony tending to show that the wife was a fraudulent participant in the mingling of her separate property with the community property, conceding that the profits referred to were community. If she was not, it would be inequitable to deprive her of her separate interest because community funds, in quantity however small, had entered into the purchase.

The eleventh special instruction requested by the plaintiff was properly refused. It reads thus: "The deeds to Mrs. M. M. Purinton, offered you in evidence to the lands in controversy herein, recite that the consideration was paid out of the separate estate of Mrs. M. M. Purinton, and limit the land to her separate use and benefit, and such recitals raise a presumption that such land is the separate property of Mrs. Purinton; but if you believe from the evidence that the lands in controversy, or any of them, were purchased with funds which were in part the commun-

ity property of W. W. Purinton and wife, it then devolves upon defendants to show how much separate and how much community funds entered into said lands, and unless they have done this to your satisfaction, you will find for plaintiff for all the lands in controversy into which community property has gone."

Under penalty of losing all her separate property, the burden, by this instruction, would have been imposed upon the wife to separate the community from the separate elements of the purchase money. The deed standing in the name of the wife as to her separate use and title, this burden, for reasons already stated, was properly imposed by the court upon the plaintiff.

The action of the court complained of in the fifteenth and sixteenth assignments of error was in keeping with the view of the law expressed in the general charge, in imposing upon the plaintiff, on account of the recitals in the deed, the burden of tracing the community funds into the lands in controversy. This view we have already approved.

Money borrowed by M. M. Purinton for the benefit of her separate estate, to be repaid out of her separate funds, would not be community property; nor would property purchased on a credit by the wife for her separate use and benefit be necessarily community property. Ulman v. Jasper, 70 Texas, 452. Special charges two and three, asserting the contrary to be the rule, were properly refused.

An additional reason for refusing special charge No. 2 consists in the fact that the evidence excludes the idea that money borrowed by the wife was invested in the purchase of lands. The testimony is to the effect that such money was used in meeting household expenses.

We are not prepared to approve the concluding proposition of appellant, that all property acquired in the course of a business venture is community property, without regard to the character of the property or to the character of the fund, separate or community, with which it was purchased.

The judgment is affirmed.                                    *Affirmed.*

Delivered January 27, 1896.

HUNTER, Associate Justice, did not sit in this case.

Writ of error refused.