## STEPHENS v. STEPHENS.   (No. 2760.)*

(Court of Civil Appeals of Texas. Amarillo. Feb. 23, 1927. Rehearing Denied March 16, 1927.)

1. **Husband and wife** ⬌247—**Modified Spanish ganancial system, not common law, determines spouses' separate and community property rights.**

In Texas, property rights of husband and wife are not controlled by common law, but Spanish ganancial system, with some modifications, determines their separate and community property rights.

2. **Husband and wife** ⬌249—**"Ganancial property" is that acquired by spouses during matrimony by common title, or by both or either by purchase or labor, and fruits of separate property brought to, or acquired by lucrative title during matrimony.**

"Ganancial property" is that acquired during matrimony by husband and wife, living together, by common title, lucrative or onerous, or that acquired by both or either by purchase or their labor and industry, and fruits of separate property which each brings to matrimony or acquires by lucrative title during continuance of partnership.

[Ed. Note.—For other definitions, see Words and Phrases, Ganancial Property.]

3. **Husband and wife** ⬌248—**Connubial partnership, from which community estate results, is founded on exact equality and justice.**

Connubial partnership, from which community estate results, is founded on principles of exact equality and justice as to property rights of spouses.

4. **Statutes** ⬌146—**Defective caption of bills making rents and revenues from husband's separate land his separate property held cured by re-enactment (Rev. St. 1925, art. 4613, Final Title, § 22; Const. art. 3, § 43).**

Rev. St. 1925, art. 4613, re-enacting provision of Laws 1917, c. 194, as amended by Laws 1921, c. 130, making rents and revenues from

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 4, 1927.

husband's separate land his separate property, cured defective caption of earlier bills, under Rev. St. 1925, Final Title, § 22, and Const. art. 3, § 43.

**5. Husband and wife ⬤⟹262(1)—Presumption that property acquired during marriage is common property may be overcome by testimony.**

The presumption that property acquired during marriage is common property may be overcome by satisfactory testimony.

**6. Husband and wife ⬤⟹257—Husband's leasing of land and receipt of proceeds of part of oil produced did not convert his separate estate into community property.**

Husband's leasing of his separate land and receipt of proceeds for his part of oil produced by lessees did not convert his separate estate therein into community·property; no skill, labor, or supervision of either spouse being expended in sale or production of oil.

**7. Husband and wife ⬤⟹257—Share of oil, paid husband by lessees before statute making rents and revenues from his separate land his separate property became effective, held not "rents" belonging to community estate (Rev. St. 1925, art. 4613).**

Eighth part of oil paid husband by his lessees before Rev. St. 1925, art. 4613, making rents and revenues from his separate land his separate property, became effective, *held* not "rents" belonging to community estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rent.]

**8. Mines and minerals ⬤⟹48—Oil in place is mineral and realty, subject to ownership, severance, and sale.**

Oil in place is a mineral and realty, subject to ownership, severance, and sale by owner.

**9. Husband and wife ⬤⟹257—Oil in place is part of corpus of, and its removal by lessees depletes, husband's separate estate in land.**

Oil in place is part of corpus of husband's separate estate in land, which is depleted by removal thereof by lessees.

**10. Mines and minerals ⬤⟹58 .Royalties on share of oil produced and saved held major consideration for conveyance of oil and gas under lease.**

Royalties *held* principal consideration received by lessor for conveyance of oil and gas under lease binding lessees to deliver eighth part of oil produced and saved to lessor's credit in pipe lines.

**11. Husband and wife ⬤⟹257—Consideration received for separate estate continues to be separate property.**

Consideration received for separate estate of husband or wife, whether money or property, continues to be separate property.

**12. Husband and wife ⬤⟹257—Separate estate remains such while clearly traceable, notwithstanding changes.**

Separate estate may undergo mutations and changes and still remain separate property, so long as it can be clearly traced and identified.

**13. Husband and wife ⬤⟹257—Proceeds of lessor's share of oil from his separate land held his separate property.**

Proceeds of share of oil, agreed to be delivered by lessees to lessor's credit as principal consideration for conveyance of oil and gas under lease of his separate land, *held* his separate property; change or mutation of oil from realty to personalty by removal from ground and money received being definitely traceable.

Appeal from District Court, Wilbarger County; P. A. Martin, Judge.

Suit by W. H. Stephens against Lucy E. Robertson Stephens, who filed a cross-action. From a judgment for plaintiff in part, defendant appeals. Affirmed.

Warlick & Poteet, of Vernon, Bullington, Boone, Humphrey & King, H. O. Williams, and J. A. Lantz, all of Wichita Falls, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and Cook, Cook & Donaghey, of Vernon, for appellee.

JACKSON, J. This suit was instituted in the district court of Wilbarger county, Tex., by the appellee, W. H. Stephens, to secure a divorce on the grounds of cruelty from the appellant, Lucy E. Robertson Stephens, and to obtain a judgment decreeing certain property hereinafter described to be his separate property.

The appellant answered by general and special denials, set up a cross-action for divorce from appellee, and sought a decree adjudging the property involved in this appeal to be the community property of herself and appellee, and asked for a recovery of a one-half interest therein.

The record discloses that the suit was filed on October 8, 1924, and in April, 1925, the trial court entered a judgment for divorce, from which an appeal was taken and the judgment reversed. 281 S. W. 1096. While the appeal from that judgment was pending, the appellee paid to appellant $4,000, for which she executed a deed in settlement of her interest in the community property. On a retrial of the case, the court below set aside the settlement made while the first appeal was pending, in which the appellant received $4,000, but allowed her to retain said sum as the evidence disclosed that some money, largely from crops, had accumulated during the marriage which belonged to the community estate of appellant and appellee, and in conformity to the answers of the jury to certain special issues submitted, rendered judgment granting appellee a divorce from appellant upon the grounds of cruelty. The $4,000 so allowed constituted no part of the property involved in this appeal, and from the judgment allowing the appellant said sum, and granting the appellee a divorce, no appeal was prosecuted.

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

At the time of his marriage on February 10, 1921, with appellant, who was his second wife, appellee was over 70 years old, and she was near the same age, and when married the appellant owned a 200-acre farm and a residence in town, and they lived together one year and separated.

Appellee and his first wife, who died in 1914, acquired, in May, 1906, the north one-half of section 83, block 14, H. & G. C. Railway survey in Wilbarger county, Tex., containing 320 acres of land. On February 10, 1921, the date of the marriage between appellant and appellee, he owned as his separate property an undivided one-half interest in said land, and the children of himself and his first wife owned the other undivided one-half interest therein.

After the marriage with appellant, appellee and the children of himself and the first Mrs. Stephens, for and in consideration of $1 and the covenants and agreements on the part of lessees to be paid, kept, and performed, granted, demised, leased, and let the above-described land to such lessees for the sole and only purpose of mining and operating for oil and gas, laying pipe lines, building tanks, power stations, and structures thereon, to produce, save, and take care of such products. The lease contracts stipulate for the commencement of the drilling of wells on the land within a certain time, recite that the lease shall remain in full force for a stipulated time and so long thereafter as oil or gas, or either of them, is produced from said premises, and provide:

"In consideration of the premises, the said lessee covenants and agrees, first, to deliver to the credit of the lessor, free of cost, to the pipe line to which he may connect his wells, the equal one-eighth part of the oil produced and saved from the leased premises."

The other provisions of the leases are not essential to a consideration of the case.

The parties to whom the land was leased, in compliance with the provisions of their contracts, found and produced oil from the premises, and delivered into the pipe lines to which the wells were connected, to the credit of the appellee, his one-eighth thereof, for which he received $24,039.72 in the year 1924, $75,979.33 from January 1, 1925, to September 1st of that year, and $106,655.64 from September 1, 1925, to June 1, 1926. The district court held that the oil placed in the pipe lines by the lessee, in compliance with the lease contracts, to the credit of appellee, was his separate property, and the money received by him therefor belonged to his separate estate, and not to the community estate of appellee and appellant, and therefore she was not entitled to any part thereof. The part of the judgment holding that such oil and the proceeds thereof were the separate property of appellee, and that appellant had no community interest therein, is challenged as error, and presents the only question involved in this appeal.

[1-3] The attorneys have cited no case, and in our investigation we have found none, in which the precise question here presented is decided. In this state, the property rights of the husband and wife are not controlled by the common law. Barkley v. Dumke et al., 99 Tex. 150, 87 S. W. 1147. The Spanish ganancial system is the basis of, and, with some modifications, constitutes our community law system, and determines the separate property rights and the community property rights of the spouses. Partis v. Parker, 22 Tex. 700.

"Ganancial property is that which the husband and wife, living together, acquire during matrimony, by a common title, lucrative or onerous, or those which husband and wife or either acquire by purchase, or by their labor and industry, as also the fruits (frutos) of the separate property which each brings to the matrimony or acquires by lucrative title during the continuance of the partnership." Cartwright v. Cartwright, 18 Tex. 626.

"The connubial partnership from which the community estate results is founded upon the principles of exact equality and justice as to property rights of the spouse." Schmidt v. Huppmann, 73 Tex. 112, 11 S. W. 175.

[4] On February 10, 1921, the date of the marriage between appellee and appellant, the law of 1917 (Laws 1917, c. 194), providing that the rents and revenues from the separate land from either spouse should be separate property, had been passed. This law, and the 1921 amendment thereto (Laws 1921, c. 130), on the account of the insufficiency of the caption to the bill, were held invalid. It was also held unconstitutional as to the wife's separate estate, as her separate property rights could neither be increased nor diminished because defined and fixed by section 15, art. 16, of the Constitution of the state. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799.

The Constitution does not define the separate rights of the husband. The 1925 Compiled Statutes of Texas, art. 4613, adopted by the Legislature, re-enacted the provision making the rents and revenues from the husband's separate land the separate property of the husband, and, in our opinion, cures the defective caption to the bill. Constitution, art. 3, § 43; American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S. W. 1019; section 22, Final Title, 1925 Statutes. The record reveals that a large part of the oil delivered in the pipe lines to the credit of appellee, and for which he received pay, occurred after article 4613 of the 1925 Statutes became effective, but, in the view we take of the case, all the funds in controversy should be disposed of under the same rules.

[5, 6] It is held in this state that crops grown on the separate land of the wife, with her separate labor, are community property

(De Blane v. Lynch, 23 Tex. 25; Forbes v. Dunham, 24 Tex. 611; Cleveland v. Cole, 65 Tex. 402); that from timber procured from the separate land of the wife, lumber sawed at her separate mill, by the labor of slaves, also belonging to her separate estate, is community property (White v. Lynch, 26 Tex. 195); that brick made on separate land of the wife, without attention from the husband, is community property (Craxton v. Ryan, 3 Willson, Civ. Cas. Ct. App. § 367); that an obligation given to the husband for timber on the wife's separate land, payable to him in lumber, is community property (Holland v. Seward, 1 White & W. Civ. Cas. Ct. App. § 944).

On these and similar cases the appellant contends that, although the land was unquestionably the separate property of appellee, the leasing thereof, the discovery of oil thereon by the lessees, and the delivery by the lessees to the credit of appellee in the pipe lines his one-eighth of such oil while he was married to appellant, made the oil so received by him community property, and appellant entitled to a one-half interest in the proceeds thereof.

In De Blane v. Lynch, supra, the court said:

"The principle which lies at the foundation of the whole system of community property is that whatever is acquired by the joint efforts of the husband and wife shall be their common property."

Based on this announcement of the law, the court continues:

"If a crop is made by the labor of the wife's slaves on the wife's land, it is community property, because the law presumes that the husband's skill or care contributed to its production, or that he, in some other way, contributed to the common acquisitions."

In Cleveland v. Cole, supra, the court held that the crops grown upon the lands of the wife, with her labor and means, were community property, because:

"It" (the property) "was acquired during the marriage, and was as much the acquests and gains of the marital partnership as if she had received it in exchange for labor with her needle, or for any other personal service she might have performed."

The courts in the other cases noted, supra, rely on De Blane v. Lynch and Cleveland v. Cole as authority and give no further reason for the holding. Analyzing these cases, we are of the opinion that the conclusions reached are founded upon facts, revealed or presumed as a matter of law, that to some appreciable extent the skill, labor, or supervision of one or both the spouses was expended in the production of the crops, lumber, or brick. The presumption that property acquired during marriage is common property may be overcome by satisfactory testimony. Mitchel v. Mitchel, 80 Tex. 101, 15 S. W.

705. Appellant had nothing to do with the transaction, and the only skill exercised or labor performed by appellee was leasing the land and receiving the proceeds for his part of the oil produced. These acts do not convert his separate estate into community property. Evans v. Purinton, 12 Tex. Civ. App. 158, 34 S. W. 350.

[7] Rents from the husband's separate property, during the time these royalties were accumulating, prior to the time article 4613 of the 1925 Statutes became effective, went to the community estate, and while "rents" and "royalties" are used interchangeably by many law-writers and in many decisions, the one-eighth part of the oil paid to appellee is not rents to which the common fund would be entitled under the facts revealed by this record. State v. Hatcher, 115 Tex. 332, 281 S. W. 192.

Profits made on an investment of the separate funds of one of the spouses become community property (Dixon v. Sanderson, 72 Tex. 359, 10 S. W. 538, 13 Am. St. Rep. 801; Jones v. Epperson, 69 Tex. 586, 7 S. W. 488; Smith v. Bailey, 66 Tex. 553, 1 S. W. 627); but the increased or enhanced value of the thing purchased with separate funds, and the increased or enhanced value of the separate property of either the husband or the wife, constitute separate property (Dixon v. Sanderson, supra; Stringfellow v. Sorrells, 82 Tex. 277, 18 S. W. 689; Evans v. Purinton, 12 Tex. Civ. App. 158, 34 S. W. 350; Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799). If such increase or enhancement in the value of the separate property is not common property, would receipts, having their source in the depletion of the corpus of a separate estate, and which instead of enhancing diminishes the value thereof, constitute community property? This brings us to a consideration of the origin and character of the funds involved in this controversy.

[8] Appellee, having acquired the land before his marriage with appellant, it was his separate property. Oil in place is a mineral and is realty, and is subject to ownership, severance, and sale by the owner.

"It is no longer doubted that oil and gas within the ground are minerals. They have peculiar attributes not common to other minerals because of their fugitive nature or vagrant habit—the disposition to wander or percolate, and the possibility of their escape from beneath one part of the surface of the earth to another. Nevertheless, they are to be classed as minerals." Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989.

"We do not regard it as an open question in this state that gas and oil in place are minerals and realty, subject to ownership, severance, and sale, while embedded in the sands or rocks beneath the earth's surface, in like manner and to the same extent as is coal or other solid mineral.

"The objection lacks substantial foundation that gas or oil in a certain tract of land can-.

not be owned in place, because subject to appropriation, without the consent of the owner of the tract, through drainage from wells on adjacent lands. If the owners of adjacent lands have the right to appropriate, without liability, the gas and oil underlying their neighbor's land, then their neighbor has the correlative right to appropriate, through like methods of drainage, the gas and oil underlying the tracts adjacent to his own." Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566.

"It is elementary that the minerals in place may be severed from the remainder of the land by appropriate conveyances. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, by this court, but not yet (officially) reported; Texas Company v. Daugherty, 107 Tex. 226, 235, 176 S. W. 717, L. R. A. 1917F, 989; State v. Downman (Tex. Civ. App.) 134 S. W. 787, 795 (writ of error denied); Downman v. Texas, 231 U. S. 353, 34 S. Ct. 62, 58 L. Ed. 264; 2 Washburn on Real Property (5th Ed.) pp. 400, 401; 1 Tiffany on Real Property, pars. 252, 253.

"The severance may be made by an exception or reservation in the deed. Lyles v. Dodge (Tex. Civ. App.) 228 S. W. 316, 317; Luse v. Parmer (Tex. Civ. App.) 221 S. W. 1031, 1032; Luse v. Boatman (Tex. Civ. App.) 217 S. W. 1096; Wallace v. Hoyt (Tex. Civ. App.) 225 S. W. 425; De Moss v. Sample, 143 La. 243, 78 So. 482; Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, 25 S. W. 932, 24 L. R. A. 507, 510; 1 Tiffany on Real Property, par. 253, p. 876; Id., vol. 2, par. 436, p. 1609; 1 Thornton on Oil and Gas (3d Ed.) par. 342, p. 496.

"When the severance is accomplished, each estate, that in the minerals in place, and that in the remainder of the land, may be a freehold, or an estate in fee simple. 2 Washburn on Real Property (5th Ed.) pp. 400, 401; 1 Tiffany on Real Property, par. 253, pp. 866, 871; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293, 22 A. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544, and cases therein cited; Kincaid v. McGowan, 88 Ky. 91, 4 S. W. 802, 13 L. R. A. 289; Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, 25 S. W. 932, 24 L. R. A. 507, 510, 511. See, also, Texas Co. v. Daugherty, 107 Tex. 226, 235, 176 S. W. 717, L. R. A. 1917F, 989; Houston Oil Co. v. Hamilton, 109 Tex. 270, 206 S. W. 817; and Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803. * * *

"The minerals in place were severed by the conveyance from the residue of the soil, and the original land as effectively divided into two tracts as if the division had been made by superficial lines, or had been severed vertically by horizontal planes." Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607.

"Oil in place under the land is real estate. The exclusive right to enter upon the land, drill wells thereon, and remove therefrom the oil to exhaustion, paying therefor a portion of the oil when extracted or the equivalent of such portion, is a property right which the law protects." Humble Oil & Refining Co. v. Kishi (Tex. Com. App.) 276 S. W. 190.

This lease, which conveys a determinable fee, granted to and vested in the lessees the title to the oil to be produced from the land during the tenure of their lease, with the obligation, among others, to deliver to the credit of appellee, in the pipe lines, his one-eighth of the oil produced. State v. Hatcher, 115 Tex. 332, 281 S. W. 192; Stephenson v. Glass (Tex. Civ. App.) 276 S. W. 1110.

The land is conceded to be the separate realty of appellee, and the foregoing authorities conclusively establish that the oil while in place is realty, and like solid minerals is capable of ownership, and as part of appellee's separate realty it belongs to him in his sole and separate right. By the conveyance, the ownership of the oil became distinct from the ownership of the balance of his realty, and for a valuable consideration a defeasible title thereto passed to the lessees.

[9] The oil in place was a part of the corpus, and its removal depleted the separate estate. The Supreme Court of Pennsylvania, in Appeal of Duff, 14 A. 364, speaking of the respective rights of the mortgagor and mortgagee to accumulated royalties from a coal mine, says:

"The first point to be determined is, What does the fund represent? The instrument under whose provisions it has been paid is called a lease, but the royalties to be paid under it have none of the qualities of rent. They certainly are the price of the coal in place. They are not paid for the use of the tract by a tenant, but for the price of the chief article of value in it by a purchaser. Every ton of coal mined reduces the tract in value, and, when the mines upon it are exhausted, the security for the mortgaged debt is also exhausted. That royalties are part of the corpus of the estate, and not a profit issuing out of it, was held in Caldwell v. Fulton, 31 Pa. St. 475, 72 Am. Dec. 760.

The Supreme Court of Wyoming, in State v. Snyder, 29 Wyo. 163, 212 P. 758, says:

"Oil and gas, while in situ, are part of the realty; part of the corpus of the land. When a portion of it is taken away, the proceeds necessarily arise out of the corpus, and it is humanly impossible to change that simple, plain, physical fact. The character of the proceeds can obviously, at least as between the beneficiaries, in no possible manner be changed by the nature of the documentary authority pursuant to which the oil and gas is taken out of the ground. Documents do not possess the power of an alchemist; neither do they wield a magician's wand. Whether the oil be taken out of the ground pursuant to a license, lease, sale, or any other grant, or without any authority whatever, could not in the slightest degree affect the physical fact that it comes from the corpus of the land. If taken and disposed of at all, the effect is clearly a permanent disposition of that much of the corpus, the principal, of the land, and, irrespective of the authority pursuant to which that is done, the proceeds must go to the beneficiaries according to the rights existing between them."

Our Supreme Court, in Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117, passing on the rights of the wife to a portion of "the proceeds of the oil that had been extracted and marketed" from the separate lands of her deceased husband in which she owned a life estate, held that she was not entitled to any part of the oil or the proceeds thereof because the oil was a part of the corpus of the property.

In Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, it is held that oil in place constitutes in part the "corpus of the land."

The Supreme Court approves the opinion of the Commission of Appeals in State v. Hatcher, 115 Tex. 332, 281 S. W. 192. In that opinion quotations are made from other authorities, supporting the conclusion therein reached that the removal of oil from land—

"is a permanent taking of the corpus of the property; * * * that minerals are a part of the soil and when once removed are gone forever. In other words, there is a final and permanent taking of a portion of the land."

"If it should be contended that oil, when severed from the land, becomes personalty that fact is immaterial and would not change the status of such property. * * * In other words, not only the realty, but the resulting personalty, is a part of that fund."

The opinion quotes with approval from State v. Snyder, supra:

"A great many cases are cited defining the term 'royalty,' and declaring it to be 'rent,' 'in the nature of rent,' or 'analogous to rent.' Not one of these cases deals with the subject under consideration here. Most of the cited cases are from Iowa, Illinois, Missouri, Pennsylvania, and West Virginia. Yet in each one of these states, as will be hereafter shown, the courts have held specifically, and without leaving any doubt on the proposition, that under circumstances similar to those in the case at bar royalty on mineral leases is a part of the corpus of the property, and that the principal of the royalty belongs to the party entitled to the corpus."

This opinion is discussing the permanent and the available funds of the University, but the analogy between said two funds and the separate and the community estate of husband and wife render this authority very persuasive.

[10] The lease contracts provide that, in consideration of the premises, which, on the part of the appellee, was the conveyance of the oil and gas, the lessees convenanted and agreed to deliver to the credit of the appellee in the pipe lines, free of cost, one-eighth part of the oil produced and saved. In Stephens County v. Mid-Kansas Oil & Gas Co., supra, speaking of the consideration for the lease, it is said:

"The principal consideration was royalties dependent on the marketing of the gas or oil."

In Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, it is held:

"The vital consideration for the grant was royalties on mineral production."

In State v. Hatcher, supra, it is stated:

"The consideration in the University leases, as provided by statute, is $2 per acre and a sum of money equal to a royalty of one-eighth of the value of the gross production of petroleum from said land. The royalty is not one-eighth of the oil, but that proportion of the value of the oil."

Numerous other authorities might be cited holding that the royalty constitutes the major consideration received by the lessor.

[11, 12] It has always been held in this state that the consideration received for the separate estate of the husband or wife, whether money or property, continues to be separate property (Chappell v. McIntyre, 9 Tex. 161; Oliver v. Robertson, 41 Tex. 422), and that the separate estate may undergo mutations and changes and still remain separate property so long as it can be clearly traced and identified (Arnold v. Leonard, 114 Tex. 535, 273 S. W. 802; Rose v. Houston, 11 Tex. 324, 62 Am. Dec. 478; Schmidt v. Huppmann, 73 Tex. 112, 11 S. W. 175).

[13] The land is separate property. The oil in place is realty capable of distinct ownership, severance, and sale. It is a part of the corpus of appellee's sole estate. He conveyed his oil and received, as the principal consideration therefor, one-eighth of the production. No skill, labor, or supervision of either of the spouses, and no community property was expended in the sale or production. The oil and the proceeds thereof received by appellee were neither rent nor profits, within the meaning of the law making such common property, but the consideration for separate realty. Extracting the oil from beneath the surface depletes and exhausts forever the corpus of his separate property; removing it to the top of the ground changes it from real to personal property; but such change or mutation, and the money received, are definitely traced, and, in our opinion, the fund in controversy belonged to appellee in his sole and separate right.

The judgment is affirmed.