NORRIS et vir. v. VAUGHAN.

No. 6241.

Court of Civil Appeals of Texas. Amarillo.

Oct. 20, 1952.

Rehearing Denied Dec. 1, 1952.

R. H. Cocke, Wellington, and Richard H. Cocke, Dallas, for appellants.

Culton, Morgan, Britain & White, Amarillo, for appellee.

LUMPKIN, Justice.

On August 16, 1941, the appellee, Hal Vaughan, married Beulah Hunsaker. On May 17, 1947, Mrs. Vaughan died intestate. Other than her husband, she was survived by the appellant, Edith Norris, her daughter by a previous marriage.

This suit was brought by the appellant and her husband, C. R. Norris, for an accounting and to recover from the appellee the property, money and estate to which Edith Norris and her husband (both of whom being hereafter referred to as "appellant") alleged she was entitled as her mother's only heir. She asked that the appellee itemize everything he owned at the time of the marriage, the receipts and expenditures made during the marriage and all the properties on hand at the time of his wife's death. The appellant alleged that the accounting would disclose that she owns an interest in the property in excess of $60,000, and she asked that judgment be rendered for title to and possession of the property, money and estate to which the court would find she is entitled. The appellee answered by pleading, in effect, that most of the property which the appellant alleged to be community was not community but separate since it either had been his before his marriage to the appellant's mother or had been acquired with separate funds after his marriage.

At the time of his marriage, the appellee was a member of three partnerships: (1) The Shamrock Gas Company, an organization which supplies natural gas to the City of Shamrock, Texas, through its own distributing system; (2) The Vaughan Well Company, an organization engaged in drilling gas wells and in the sale of gas to the Shamrock Gas Company; and (3) Pendleton and Vaughan, an organization engaged in the drilling of oil and gas wells and in the production and sale of these minerals. At the time of the marriage the appellee owned seven gas wells which throughout the record are referred to as the Pakan Wells.

After the case went to trial, the court, on its own motion, appointed an auditor and ordered him to prepare an audit and inventory of the disbursements and receipts of the Shamrock Gas Company, the Vaughan Well Company, Pendleton and Vaughan, and Hal H. Vaughan for the period August 16, 1941, to May 17, 1947. Later, this report was supplemented with one carrying the audit forward from May 17, 1947, to October 31, 1951.

After the audit was prepared and filed, the court entered its judgment. It found that all the gas wells in which the appellee owns an interest were his separate estate

and property; that there was no commingling of the funds received by the appellee during his marriage but that all of the funds, both separate and community, could be traced by the audit. The court found that at the time of his marriage the appellee owned an undivided one-fourth interest in the Shamrock Gas Company, a partnership composed of W. S. Pendleton, B. F. Holmes, A. N. Holmes and the appellee; that the one-fourth interest was the appellee's separate estate and that the only interest the community had in this property was $28,100, the amount the appellee had withdrawn from the partnership during his marriage.

The court also found that the appellee owned an undivided one-fourth interest in the Vaughan Well Company, a partnership composed of W. S. Pendleton, B. F. Holmes, A. N. Holmes and the appellee; that the one-fourth interest is the appellee's separate property and that the only interest the community acquired in the partnership was in the amount of $2,311.25, which the appellee withdrew from the partnership during the marriage.

The court found that the appellee at the time of his marriage owned an undivided one-half interest in the partnership of Pendleton and Vaughan, an oil and gas drilling concern, and that all his interest in this partnership is his separate property. But the court found that the community had acquired in this partnership an undivided interest in wells produced by it during the marriage period—the McDowell Wells Nos. 1 through 7, the D'Arcy McDowell Well No. 1, and the Taylor Wells Nos. 1 and 2, the total community interest in these wells being 169/512 interest in the dry gas rights under the leases—and an undivided one-half interest in the net proceeds from the McDowell Wells Nos. 1 through 7, the D'Arcy McDowell Well No. 1, and the Taylor Wells Nos. 1 and 2 since the date of their production to October 31, 1951. (However, the McDowell Well No. 7, the D'Arcy McDowell Well and the Taylor Well No. 2 were either dry holes or plugged.) The court directed that the net income from these wells be calculated in this manner: the cost of drilling, plus the cost

of operating them, plus the royalty payments were to be subtracted from the total receipts. By this method of calculation the court found the net income of the wells to be $52,948.63.

The court further found as community property the residence located in Shamrock, together with the sum of $1,237.00, the amount of salaries, dividends, and farm rents earned during the marriage period. The court, however, found that the seven gas wells referred to in the record as the Pakan Wells were the appellee's separate property, and the court also found that all the community expenditures amounted to $69,094.42. It found that the community earnings amounted to $58,122.57 (the sum of $28,100, plus $2,311.25, plus $1,237, plus one-half of $52,948.63, the net earnings from the gas wells). The court then said: "Since the total community expenditures during the marriage period amounted to $69,094.42, the total net community income of $58,122.57 would leave a deficiency of $10,971.85, which amount should be taken into consideration and deducted from whatever totals may be arrived at of the net community funds to be obtained from the community interest in the McDowell Wells Nos. 1, 2, 3, 4, 5 and 6; D'Arcy McDowell Well No. 1; and Taylor Well No. 1, after the date of the calculations hereinabove made, which date is October 31, 1951."

The court decreed that the community existing between the parties owns an undivided 169/512 interest in the dry gas rights under the leases of these properties where are located the McDowell Wells Nos. 1 through 6; the D'Arcy McDowell Well No. 1; and the Taylor Well No. 1; but that this community estate and these wells are indebted to the appellee in the sum of $10,971.85, which is to be paid him out of the gas runs from these wells. The court divided all costs in the case equally between the parties, including the auditor's fees and accounting fees. Both parties excepted to this judgment, and both have perfected their appeal to this court.

At the time the appellant married and all during the marriage period he was engaged in the business of procuring leases and drilling rights, in drilling oil and gas

wells, and in producing and selling oil and gas.

In this case we are to determine what interest the community estate acquired in the income from the various enterprises operated by the appellee, to find what interest the community acquired in any of the various wells drilled during the marriage period, and to discover what amount of money the appellant is entitled to as her inheritance from the community property estate which had existed between the appellee and the appellant's mother.

Article 4613, Vernon's Annotated Civil Statutes, provides that: "All property of the husband, both real and personal, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, shall be his separate property. * * * During marriage the husband shall have the sole management, control, and disposition of his separate property, both real and personal." Our courts have held that property acquires a status of separate or community at the time of its acquisition, Van v. Webb, Tex.Civ.App., 237 S.W.2d 827, writ ref. n. r. e., and this status is not affected by any number of changes and mutations in its form. 23 Tex.Jur. 89; Farrow v. Farrow, Tex.Civ. App., 238 S.W.2d 255.

At the time of his marriage the appellee owned, and the court so found, as his separate property the seven gas wells known as the Pakan Wells. He also owned an undivided one-fourth interest in the O'Gorman Wells Nos. 1 and 2 and the Sims Well. (These gas wells are the property of the Vaughan Well Company.) The appellant contends that the receipts from the sale of gas from these ten wells constituted community income; but the appellee insists, and the trial court found, that the receipts from the sale of gas from these wells were the appellee's separate property.

It appears, however, that during the marriage period the appellee drilled twelve additional gas wells in which he owned an undivided interest. Ten of these—the McDowell Wells Nos. 1 through 7, and the Taylor Wells Nos. 1 and 2—were drilled by the partnership of Pendleton and Vaughan and were acquired by a farm-out arrangement; that is, the purchase price of the well was the cost of drilling. Two other gas wells were also acquired in this fashion—the Hill Well and the Cantrell Well. The appellant contends that these twelve gas wells were community property, while the appellee insists they are separate property. The trial court found that the Hill and Cantrell Wells were separate property, but held that the McDowell and Taylor Wells were community property.

We shall now examine the audit and determine which of these wells and income therefrom are the appellee's separate property.

On the date of the marriage, August 16, 1941, the appellee owned the Pakan Wells. During the 5 years and 9 months of the marriage these wells produced a net income of $80,661.57. Is this income separate or community property?

In Texas the doctrine of ownership in place prevails, and oil and gas beneath the soil are considered a part of the realty or corpus of the land and subject to ownership, severance, conveyance, lease and taxation. When oil or gas is removed from the soil, it becomes personalty. 31-A, Tex.Jur. 24 et seq.; Hager v. Stakes, 116 Tex. 453, 294 S.W. 835; Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290, writ dism.; Choice v. Texas Co., D.C., 2 F. Supp. 160; Ferguson v. Commissioner of Internal Revenue, 5 Cir., 45 F.2d 573; Chesson v. Commissioner of Internal Revenue, 5 Cir., 57 F.2d 141. The appellant admits that income from royalties from oil and gas produced from separate lands is separate property; but she argues, without citing any authority, that income from oil and gas produced from a lessee's interest is community. Under certain circumstances this could be true. 23 Tex.Jur. 123. Our Texas courts, however, have often held that an ordinary oil and gas lease creates a determinable estate in the corpus of the minerals in the land. The Federal Courts have held that the proceeds from the sale of oil and gas from separately owned oil and gas leases remain separate, rather than

community, through all of their mutations and changes so long as they can be clearly traced and identified. In Jones v. Trapp, 186 F.2d 951, 955, the United States Court of Appeals for the Tenth Circuit said:

"Suffice it to say that under the law of Texas, oil and gas in place is realty, and its removal and sale amounts to a depletion of that part of the corpus. Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290. And, since the proceeds from the sale of the oil represents a sale of a part of the realty, the income therefrom is separate income of the owner. Commissioner v. Wilson, 5 Cir., 76 F.2d 766; Welder v. Commissioner, 5 Cir., 148 F.2d 583; Merten's, Vol. 3, Sec. 19.16, p. 34. Cf. Commissioner v. Gray, 5 Cir., 159 F.2d 834; United States v. Harang, 5 Cir., 165 F.2d 106. There is nothing on this record to indicate what, if any, of the reported income is attributable to the community labor, skill and talent. We therefore have no occasion to consider whether the separate income became unidentifiably commingled with community income. See McFaddin v. Commissioner, 5 Cir., 148 F.2d 570."

In this case the appellee's leases on the Pakan Wells were his separate property; the gas in place was his separate property; removing it from the ground changed it to personal property; no community funds or labor was expended in its sale or production; and the skill or supervision which the appellee may have exercised in producing and selling the gas was, in our opinion, only that management and control of his separate property authorized by Article 4613. The proceeds of the Pakan Wells, therefore, are his separate property. He also owns as his separate property one-fourth of the proceeds of the O'Gorman Wells Nos. 1 and 2 and the Sims Well, three wells he had owned an interest in at the time of his marriage. Stephens v. Stephens, supra; Evans v. Purinton, 12 Tex.Civ.App. 158, 34 S.W. 350.

Now we must decide whether the wells drilled after the marriage—the McDowell Wells, the Taylor Wells, and the Hill and Cantrell Wells—constitute separate property. The Hill and Cantrell Wells were purchased by the Vaughan Well Company. At the time of the appellee's marriage the Vaughan Well Company (in which the appellee owned a one-fourth undivided interest) owned assets worth $57,154.77 and had on hand cash and its equivalent amounting to $6,009.38. The audit shows that on December 31, 1946, after paying the cost of both the Hill Well and the Cantrell Well, the Vaughan Well Company had on hand the sum of $14,424.71. The audit reveals that no community funds were expended in the drilling of these wells, and the evidence does not reveal that the appellee spent enough time or effort in drilling the wells or in producing and in marketing the natural gas to say that the sums collected were impressed with the community character. The audit further reveals, as found by the trial court, that the only interest the community acquired in this partnership was $2,311.25, the amount the appellee had withdrawn during the marriage period.

Next, we must determine whether the McDowell Wells, the D'Arcy McDowell Well, and the Taylor Wells are separate or community property. These wells were acquired by the partnership of Pendleton and Vaughan during the marriage period. The trial court found that the appellee's undivided one-half interest in Pendleton and Vaughan was his separate property at the time of the marriage, but the court also found that the parties own an undivided 169/512 interest in the dry gas rights under these leases as well as an undivided one-half interest in these gas wells from the date of their production to October 31, 1951.

In discussing whether property acquired during marriage is either separate or community, the Supreme Court said in Huston v. Curl, 8 Tex. 239, 242:

"It is the settled doctrine and law that property purchased during the marriage, whether the conveyance be made to the husband or wife separately or to them jointly, is presumed to belong to the community. This presumption may be rebutted by clear and satisfactory proof that the purchase was

made with the separate funds of either husband or wife, in which case it remains the separate property of the party whose money was employed in the acquisition."

On the same subject this court in Coggin v. Coggin, Tex.Civ.App., 204 S.W.2d 47, 51, again states the accepted rule of law: "Although land purchased by a husband and wife * * * is presumed to be community property, this presumption may be overcome by showing that the consideration was from one of the spouse's separate property."

█ In our opinion these wells were produced with the appellee's separate property. The audit reveals—clearly and satisfactorily—that during the marriage period sufficient funds were collected by this partnership to pay the costs of producing these wells. It is true that some of the receipts are to be classified as community property, such as lease rentals, which amounted to $1,919.86. Our courts have held that where separate and community funds are commingled in such a manner that neither can be distinguished from the other, the entire account must be regarded as community. Boyd v. Orr, Tex.Civ.App., 170 S.W.2d 829. That, however, is not the situation in this case. The audit shows the amount of the community funds collected by Pendleton and Vaughan, and it also shows that $14,-225.49, or $12,305.63 more than was due, was paid the community. All the wells drilled by this partnership were paid for by separate funds, and the trial court erred in holding otherwise.

Moreover, we find, as did the trial court, that the appellant is not entitled to any portion of the appellee's separate income, since all the funds receivable can be traced in the audit and there is no evidence that the appellee wrongfully confused his separate and his community estate. As we have seen his community income was $58,-937.82 but the community expenses amounted to $69,094.42.

█ The appellant contends that the court erred in finding that the case was in the nature of a partition suit and erroneously taxed the costs against her as provided by Rule 778, Texas Rules of Civil Procedure. Obviously this is a suit for accounting and a partition of property, and in our opinion the court did not err in taxing the costs as it did. The appellant insists the court erred in not filing additional findings of fact and conclusions of law. She has not shown that she has suffered any injury because of the court's action in this respect. In Wagner v. Riske, 142 Tex. 337, 178 S.W.2d 117, 120, the Supreme Court said:

"In spite of the above rules, a failure of a trial court to prepare and file findings of fact or conclusions of law under Rule 296, or additional or amended findings of fact or conclusions of law under Rule 298, will not call for a reversal of the trial court's judgment, if the record before the appellate court affirmatively shows that the complaining party has suffered no injury in the premises."

The record affirmatively shows that neither party has suffered an injury by the court's failure to file additional findings of facts and conclusions of law.

We have carefully reviewed the voluminous record in this case. Other than point of error No. 9, which is sustained, all of the appellant's points of error are overruled. In our opinion the court erred in finding that the community had any interest in the McDowell Wells Nos. 1 through 6, the D'Arcy McDowell Well No. 1, and the Taylor Well No. 1, or in the dry gas rights under these leases including the rights under McDowell No. 7 and Taylor No. 2. We, therefore, sustain the appellee's point of error in this connection, and we reverse and render this portion of the trial court's judgment. In its judgment the court had provided that the separate estate be reimbursed for the amount used in supporting the community over and above that earned by the community and provided that the reimbursement should be derived from the sale of gas from these wells. Because of our holding concerning the wells, we believe it unnecessary to rule on the appellant's point of error directed at this portion of the trial court's judgment.

The appellee agrees with the appellant's point of error No. 9 that Lots 11, 12 and 13, Block 50, of the Woodley Southside Addition to the town of Shamrock, Wheeler County, Texas, as well as the residence located thereon, are part of the community estate. That portion of the judgment which does not decree the lots to be community property is also reversed and judgment is here rendered for the appellant for the title and possession of an undivided one-half interest in them; other than these exceptions, the trial court's judgment is affirmed.